IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KAREN Y. PAIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-07-785-F |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her concurrent applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed her applications on September 29, 2004. (TR 61-63, 291-293). In her applications, Plaintiff asserted that she became disabled on November 26, 2001,

due to knee, hip, spine, ankle, and foot problems, high blood pressure, and depression. (TR 72). Plaintiff stated that she stopped working on September 5, 2001, due to family problems and that she injured her ankles on November 26, 2001. (TR 68, 73, 87). Plaintiff described a high school education and previous work experience as a fast food worker and cafeteria worker for over 20 years. (TR 73, 78, 80, 306). Plaintiff's applications were administratively denied. (TR 32-35). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Moser ("ALJ") on January 5, 2007. (TR 300-331). At this hearing, Plaintiff and a vocational expert ("VE") testified. During the hearing, Plaintiff amended her alleged disability onset date to July 13, 2004. (TR 305). Subsequently, the ALJ issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 15-24). Plaintiff's request for review of the ALJ's decision was rejected by the Appeals Council. (TR 4-7). Having exhausted her administrative remedies, Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this Complaint is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence,"

Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(I), 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2007); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399

F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Analysis

The ALJ concluded at the first step of the requisite sequential evaluation procedure that Plaintiff had not worked since her alleged onset date. At the second step, the ALJ found that Plaintiff had severe impairments due to "effects of obesity and affective mood disorders." (TR 17). At step three, the ALJ found that Plaintiff's severe impairments, when considered in connection with the requirements of the agency's Medical-Vocational Guidelines for obesity and affective disorders, were not disabling *per se*. At the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level with additional restrictions of standing/walking for two hours out of an eight hour day and sitting six hours out of an eight hour day, only occasional climbing, crouching, or kneeling, no crawling, and limited to jobs requiring no in-depth contact with the public, allowing work at a slow pace, and requiring her to carry out no more than simple instructions. (TR 18). Relying on the testimony of the VE as to the availability of jobs for an individual with Plaintiff's vocational characteristics and this RFC for work, the ALJ found that Plaintiff had the RFC to perform work available in the national and regional economies, including the sedentary, unskilled jobs of food and beverage order clerk and address/mail sorter. (TR 23). Based on these findings, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff contends that the ALJ failed to provide an adequate rationale for rejecting probative evidence in the record concerning Plaintiff's mental impairments. In support of

this assertion, Plaintiff refers to five Global Assessment of Functioning ("GAF") scores[1] contained in diagnostic records of Plaintiff's mental health providers. These GAF scores included a score of 48 entered on July 13, 2004 (TR 134), a score of 50 entered on December 22, 2005 (TR 277), a score of 45 entered on January 26, 2006 (TR 268), a score of 40 entered on February 6, 2006 (TR 237, 261), and a score of 50 entered on March 27, 2006 (TR 231). A GAF rating between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). However, "[s]tanding alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work." Lee v. Barnhart, 2004 WL 2810224 (10th Cir. Dec. 8, 2004)(unpublished op.).

The ALJ did not ignore the range of GAF scores entered in Plaintiff's treating mental health provider's diagnostic records. Nor, as Plaintiff suggests, did the ALJ ignore the diagnoses entered by various mental health professionals. The ALJ's decision reflects consideration of the record of Plaintiff's brief treatment at Oklahoma County Crisis

---

[1]The diagnosis of mental impairments "requires a multiaxial evaluation" in which Axis I "refers to the individual's primary clinical disorders that will be the foci of treatment," Axis II "refers to personality or developmental disorders," Axis III "refers to general medical conditions," Axis IV "refers to psychosocial and environmental problems," and Axis V "refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning (GAF), which does not include physical limitations." Schwarz v. Barnhart, No. 02-6158, 2003 WL 21662103, at *3 fn. 1 (10th Cir. July 16, 2003)(unpublished op.)(citing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM IV)(4th ed. 1994), pp. 25-32).

Intervention Center ("OCCIC") on July 13, 2004. In this treatment record, the examiner noted Plaintiff's symptoms, the findings in a mental status exam, the preliminary diagnosis of major depression, severe, with no psychosis, and that anti-depressant medication was dispensed to Plaintiff. (TR 133-136). As the ALJ noted, Plaintiff was advised at that time to obtain counseling at a community mental health clinic. (TR 136). As the ALJ also noted, Plaintiff returned to OCCIC five months later requesting more anti-depressant medication. (TR 275-276). A mental status exam was conducted, and a preliminary diagnosis of depression NOS was entered as well as a GAF score of 50, and Plaintiff was referred to North Care Center. (TR 275-277).

The ALJ's decision also reflects consideration of the record of Plaintiff's treatment at North Care Center in 2006. The record shows Plaintiff was initially evaluated at North Care Center in January 2006, where Plaintiff indicated she was seeking medications for depression, anxiety, anger, and insomnia. (TR 265-269). An initial diagnostic impression of depression disorder and a GAF score of 45 were entered. (TR 268). In an extensive intake psychological evaluation conducted at North Care Center in February 2006, Plaintiff indicated she was seeking treatment for anger issues. It was noted that Plaintiff described "temper tantrums more than once weekly" and alienation from two of her three adult children due to her behavior. (TR 247). Plaintiff stated she was unable to afford medication for depression or high blood pressure, and she stated that the anti-depressant medication previously prescribed for her was beneficial. (TR 251, 252). As noted in the report of this initial evaluation, Plaintiff stated she was living with her sister who was disabled due to

bipolar disorder, that she had lived with her sister for 1 ½ years, that she managed her sister's money and paid her sister's bills, that she provided housekeeping, laundry, and cooking duties for her sister in exchange for room and board, that she oversaw her sister's medication and hygiene, and that she also accompanied her sister to doctor's appointments and to the grocery shop. (TR 244, 258, 259, 260, 262).  In a treatment plan entered in this evaluation report, Plaintiff was noted to be "having problems with depressed mood, panic attacks, and anxiety." (TR 241).  She was referred for case management services to obtain benefits and medical care and "to eventually assist her in seeking appropriate employment" and also referred to a psychiatrist for medication management, with treatment estimated to last one year. (TR 239, 243, 244, 262).

The ALJ's decision reflects her consideration of the progress notes of the Plaintiff's treating psychiatrist in 2006, Dr. Bhupathiraju., including the psychiatrist's diagnostic impressions and objective findings with respect to Plaintiff's mental status.  As the ALJ pointed out in her decision, although the psychiatrist noted an initial diagnostic assessment of depression and anxiety disorders and a GAF score of 50, the psychiatrist's progress notes did not indicate objective findings of severe symptoms or functional limitations related to Plaintiff's mental impairments.  (TR 21, 219, 224, 227, 230-231, 271).  Dr. Bhupathiraju prescribed anti-depressant and anti-anxiety medications for Plaintiff, but there is no record that Plaintiff was referred for counseling.

The ALJ expressly considered the relevant GAF scores and diagnostic assessments in the record pertaining to Plaintiff's mental impairments and found that Plaintiff's mental

impairments due to affective disorders were severe. The Tenth Circuit Court of Appeals has stated in an unpublished decision that "a low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record." Petree v. Astrue, No. 07-5087, 2007 WL 4554293 (10th Cir. Dec. 28, 2007)(unpublished op.)(citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002), and Lee v. Barnhart, 117 F. App'x 674, 678 (10th Cir. 2004)(unpublished op.). The ALJ was not required to discuss every piece of evidence in the record, and the ALJ's decision reflects consideration of both the objective and subjective evidence she relied upon and the probative evidence she rejected. In particular, the ALJ provided adequate reasons for finding that the low GAF scores contained in the Plaintiff's medical records at OCCIC and North Care and the records of her treating psychiatrist were inconsistent with other evidence in those same treating records and with the consultative examiner's objective findings concerning the extent of Plaintiff's mental impairments. No error occurred in this regard.

Following the appropriate procedure for evaluating the severity of Plaintiff's mental impairments, the ALJ found that as a result of Plaintiff's affective disorders Plaintiff experienced functional limitations of mild difficulties in maintaining concentration, persistence, or pace and mild difficulties in social functioning. (TR 18). This finding is consistent with the report of the consultative psychological examiner, Dr. Green, who evaluated Plaintiff on February 23, 2005. (TR 146-150). According to Dr. Green's report, Plaintiff stated that she quit working in 2002 in order to take care of her son with whom she was experiencing "problems." (TR 147). As the ALJ pointed out, Plaintiff described her

mood as "pretty good" in response to Dr. Green's questioning, and she also stated she had almost daily contact with a friend. (TR 147). Dr. Green reported that Plaintiff showed no signs of memory impairment, she was well oriented, and she worked at a slow pace although she was able to retain and carry out simple, detailed, and more complex instructions correctly. (TR 148-149).

The ALJ incorporated the Plaintiff's functional limitations resulting from her mental impairments into the RFC finding. Plaintiff contends that the ALJ erred in making an RFC finding because the ALJ did not consider whether Plaintiff could "perform these requisite physical and mental activities on a full-time basis." Plaintiff's Brief, at 5. However, Plaintiff has misinterpreted the governing regulations. Social Security Administration regulations describe the RFC assessment that must be made by the administrative factfinder. The RFC assessment for physical abilities is an assessment of "the nature and extent of [the claimant's] physical limitations and [a determination of the claimant's RFC] for work on a regular and continuing basis." 20 C.F.R. § 404.1545(b). An analogous assessment is made with respect to the claimant's mental abilities. 20 C.F.R. § 404.1545(c). Social Security Regulation 96-8p defines "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule." Thus, the RFC finding made by the ALJ encompassed the Plaintiff's abilities to perform full-time work, and this argument is without merit.

Plaintiff contends that there is not substantial evidence in the record to support the ALJ's finding that she retains the physical capacity to perform full-time work. However, the Plaintiff does not refer to objective medical evidence that she believes is inconsistent with

9

ALJ's RFC finding. Plaintiff refers only to the VE's testimony in response to questioning by Plaintiff's attorney that contained physical limitations beyond those found by the ALJ to be supported by the medical evidence. At Plaintiff's administrative hearing, her attorney cross-examined the VE and presented a hypothetical of an individual who "would require frequent unscheduled rest breaks [of] ten to fifteen minutes per hour" and asked the VE whether such an individual could perform unskilled work. (TR 329). The VE responded that such a requirement would preclude sustained competitive employment. (TR 329). Plaintiff does not point to objective medical evidence in the record to support the hypothetical inquiry presented to the VE by her attorney. The ALJ accurately described the medical and nonmedical record in connection with Plaintiff's alleged walking and standing limitations in her decision. Plaintiff estimated at the hearing that she could walk for less than half a block. (TR 311). She also described a need to alternate resting for maybe 30 minutes to an hour with the performance of housework such as sweeping or mopping. (TR 309).

The ALJ concluded that this testimony was only partially credible. The ALJ recognized that Plaintiff had some exertional limitations due to her obesity but that Plaintiff's subjective assessments of her ability to walk and/or stand were not consistent with the medical record. (TR 21). Specifically, the ALJ relied on the report of the consultative physical examiner, Dr. Cherry. In this consultative examination conducted on February 2, 2005, Dr. Cherry noted that Plaintiff exhibited edema in her lower extremities and "blunted" reflexes. (TR 138). Plaintiff, however, exhibited normal range of back, hip, knee, ankle, shoulder, elbow, and wrist motion, no signs of scoliosis, no difficulty with ambulation, no

difficulty with heel to toe walking, a stable gait, no difficulty getting on or off the examining table, no need for an assistive device for walking or standing, good sensation, and excellent coordination. (TR 138-139).

The ALJ also acknowledged and relied on Plaintiff's statements concerning her usual daily activities, which included housework, laundry, cooking, assisting her disabled sister with her medications and hygiene, attending doctor's appointments and grocery shopping with her sister, as well as taking care of her own personal needs and visiting with her friends and sister. (TR 21-22). Plaintiff takes issue with the ALJ's reliance on these alleged "sporadic" activities in determining her credibility. Plaintiff's Brief, at 8. However, Plaintiff did not allege that these activities were done sporadically. Rather, she stated that she performed these activities on a regular basis and that the household chores were performed in exchange for food and shelter provided by her sister. Additionally, Plaintiff stated that she controlled her sister's finances and paid bills for the household. The ALJ adequately explained the specific evidence she relied on to assess Plaintiff's credibility, and the ALJ's credibility decision rested on appropriate evidence. See Luna v. Bowen, 834 F.2d 161, 165-166 (10th Cir. 1987)(recognizing factors to be considered in assessing disability claimant's credibility). The ALJ did not err in relying on Plaintiff's subjective statements concerning her usual daily living activities in determining the credibility of her assertion of disabling pain and nonexertional impairments. Id. at 166 (claimant's daily activities should be considered in assessing credibility). Moreover, the record contains no evidence showing that Plaintiff persistently sought medical treatment for back, hip, or knee pain, and no doctor or

treating medical provider indicated that Plaintiff experienced severe, disabling pain.

In discussing the RFC finding concerning Plaintiff's ability to perform physical activities, the ALJ discussed her evaluation of the opinion letter authored by a registered nurse practitioner at Plaintiff's treating medical clinic. The record shows that on August 3, 2004, soon after Plaintiff alleged she became disabled, Plaintiff requested that her treating clinic provide a letter stating that she was unable to work due to "hip pain." (TR 200). A registered nurse practitioner at Plaintiff's treating clinic noted that she composed a letter stating that Plaintiff "cannot work in a job that requires for her to walk long distances or requires lots of walking." (TR 200). The ALJ reasoned that the registered nurse practitioner was not an acceptable medical source. (TR 22). Acceptable medical sources include licensed medical or osteopathic physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). According to the regulations, only acceptable medical sources may provide medical opinions concerning the nature and extent of a claimant's impairments. 20 C.F.R. § 404.1527(a)(2). However, the regulations also contemplate that evidence concerning a claimant's impairments may come from "other health care providers who are not acceptable medical sources." 20 C.F.R. § 404.1502. The regulations describe these other medical sources as including "nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologist, and therapists." 20 C.F.R. § 404.1513(d). These sources may provide evidence "to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 C.F.R. § 404.1513(d). In Social Security Ruling 06-03p, the agency has interpreted these

regulations and prescribes that the factors employed for weighing opinion evidence from acceptable medical sources apply also to the opinions of other medical sources, as well as evidence from non-medical sources. SSR 90-03p, 2006 WL 2329939 (Aug. 9, 2006), at *4.

The ALJ's decision shows that the ALJ properly considered the registered nurse practitioner's opinion. The ALJ reasoned that the opinion (1) did not state that Plaintiff was unable to work at all jobs and (2) was not supported by medically accepted clinical and laboratory findings. (TR 22). Based on this rationale, the ALJ found that the opinion was not entitled to controlling weight. "If an ALJ rejected the opinion of a treating physician, he or she must articulate 'specific, legitimate reasons' for doing so." Washington v. Shalala, 37 F.3d 1437, 1440 (10th Cir. 1994)(quoting Reyes v. Bowen, 845 F.2d 242, 244-245 (10th Cir. 1988). "A treating physician's opinion may be rejected if his conclusions are not supported by specific findings." Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994). The ALJ provided legitimate reasons that are supported by the evidence for finding that the registered nurse practitioner's opinion was not entitled to controlling weight. There is substantial evidence in the record supporting the ALJ's decision to discount this evidence. With respect to Plaintiff's ability to walk and/or stand, the ALJ's RFC finding included a limitation of walking or standing for no more than six hours in an eight-hour workday. Plaintiff points to no objective medical evidence in the record that is inconsistent with this RFC finding.

Plaintiff asserts that there is not substantial evidence in the record to support the ALJ's finding that she maintains the mental ability to perform substantial gainful activity. Plaintiff

refers to the report of the consultative psychological evaluation of Plaintiff conducted by Dr. Green. However, Dr. Green did not find that Plaintiff's mental impairments precluded her from performing all work activity. Dr. Green found that Plaintiff worked at a "slow pace" and showed "some limitations" in concentration, arithmetic reasoning, and abstract reasoning. (TR 148). Dr. Green assessed Plaintiff as being capable of retaining and carrying out simple, detailed, and more complex instructions and of relating interpersonally in an appropriate manner. (TR 149). Plaintiff does not suggest how these objective findings by Dr. Green are inconsistent with the ALJ's RFC finding for the ability to perform work that allows Plaintiff to work at a slow pace, to carry out only simple instructions, and to handle jobs with no in-depth public contact. (TR 18, 327). Rather, the ALJ's RFC finding is consistent with Dr. Green's report of his consultative evaluation of Plaintiff. Although Dr. Green indicated that Plaintiff would not be capable of managing any benefits (TR 150), Plaintiff expressly stated at her hearing that she felt she had no trouble handling money and would be capable of handling benefits. (TR 314-315). Plaintiff's statements concerning her usual activities, including "pretty well doing everything" for herself and her sister, managing her disabled sister's finances, and paying bills for the household (TR 260, 320), are consistent with the ALJ's RFC finding of an ability to perform work with the above-described limitations. Because the ALJ's RFC findings are supported by substantial evidence in the record, the ALJ's conclusion, based on the VE's testimony concerning the availability of jobs for an individual with this RFC for work and Plaintiff's vocational characteristics, is supported by substantial evidence in the record. Accordingly, the Commissioner's decision that Plaintiff

is not disabled within the meaning of the Social Security Act should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before       May 6th      , 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this     16th     day of     April    , 2008.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE